## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **DELAWARE DISPLAY GROUP LLC** <br> **and INNOVATIVE DISPLAY** <br> **TECHNOLOGIES LLC,** | § <br> § <br> § <br> § | |
| | § | **C.A. No.**  15 - 12 2 1 |
| **Plaintiffs,** | § <br> § | **JURY TRIAL DEMANDED** |
| | § | |
| **v.** | § <br> § | |
| **LG ELECTRONICS, INC.,** | § <br> § | |
| **LG ELECTRONICS U.S.A., INC.,** | § <br> § | |
| **LG ELECTRONICS MOBILECOMM** <br> **U.S.A., INC.,** | § <br> § <br> § | |
| **LG DISPLAY CO., LTD., and** | § <br> § | |
| **LG DISPLAY AMERICA, INC.** | § <br> § <br> § | |
| **Defendants.** | § | |

### PLAINTIFFS' ORIGINAL COMPLAINT

Delaware Display Group LLC and Innovative Display Technologies LLC (collectively, "Plaintiffs") by and through their undersigned counsel, file this Original Complaint against LG Electronics, Inc.; LG Electronics U.S.A., Inc.; LG Electronics Mobilecomm U.S.A., Inc., LG Display Co., Ltd.; and LG Display America, Inc. (collectively, "LG")

### THE PARTIES

1.     Delaware Display Group LLC ("DDG") is a Delaware limited liability company with its principal place of business located at 2400 Dallas Parkway, Suite 200, Plano, Texas 75093.

2.     Innovative Display Technologies LLC ("IDT") is a Texas limited liability company with its principal place of business located at 2400 Dallas Parkway, Suite 200, Plano, Texas 75093.

3.      Upon information and belief, LG Electronics, Inc. ("LG Electronics") is a corporation in South Korea located at LG Twin Tower 128, Yeoui-daero, Yeongdeungpo-gu, Seoul, Korea, 150-721, South Korea. Upon information and belief, LG Electronics may be served with process in South Korea pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

4.      Upon information and belief, LG Electronics U.S.A., Inc. ("LG Electronics U.S.A.") is a Delaware Corporation with offices at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. Upon information and belief, LG Electronics U.S.A. may be served with process by serving its registered agent, United States Corporation Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. Upon information and belief, LG Electronics U.S.A. is a subsidiary of LG Electronics.

5.      Upon information and belief, LG Electronics Mobilecomm U.S.A., Inc. ("LG Mobile") is a California Corporation with its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. Upon information and belief, LG Mobile may be served with process by serving its Agent for Service, National Registered Agents, Inc., 818 West Seventh Street, Suite 930, Los Angeles, California 90017. Upon information and belief, LG Mobile is a subsidiary of LG Electronics.

6.      Upon information and belief, LG Display Co., Ltd. ("LG Display") is a corporation in South Korea located at LG Twin Tower, 128, Yeoui-daero, Yeongdeungpo-gu Seoul, Korea,150-721. Upon information and belief, LG Display may be served with process in South Korea pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. Upon information and belief, LG Display is a subsidiary of LG Electronics and/or LG Electronics has significant influence over LG Display.

2

7.      Upon information and belief, LG Display America, Inc. ("LG Display America") is a California Corporation with its principal place of business at 2540 North First Street, Suite 400, San Jose, California 95131. Upon information and belief, LG Display America may be served with process by serving its Agent for Service, Dong Hoon Han, 2540 North First Street, Suite 400, San Jose, California 95131. Upon information and belief, LG Display America is a subsidiary of LG Display.

8.      Upon information and belief, LG has conducted and regularly conducts business within this District, has purposefully availed itself of the privileges of conducting business in this District, and has sought protection and benefit from the laws of the State of Delaware.

## JURISDICTION AND VENUE

9.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

10.      As further detailed herein, this Court has personal jurisdiction over LG. LG is amenable to service of summons for this action. Furthermore, personal jurisdiction over LG in this action comports with due process. LG has conducted and regularly conducts business within the United States and this District. LG has purposefully availed itself of the privileges of conducting business in the United States and, more specifically, in this District. LG has sought protection and benefit from the laws of the State of Delaware by incorporating in the state of Delaware, incorporating a subsidiary in the State of Delaware, and/or by placing infringing products into the stream of commerce through an established distribution channel with the expectation and/or knowledge that they will be purchased by consumers in this District. Plaintiffs' causes of action arise directly from LG's business contacts and other activities in this District.

11.     LG – directly or through intermediaries (including distributors, retailers, and others), subsidiaries, alter egos, and/or agents – ships, distributes, offers for sale, and/or sells its products in the United States and this District. LG has purposefully and voluntarily placed one or more of its infringing products, as described below, into the stream of commerce with the expectation and/or knowledge that they will be purchased by consumers in this District. LG knowingly and purposefully ships infringing products into and within this District through an established distribution channel. These infringing products have been and continue to be purchased by consumers in this District. Upon information and belief, LG has committed the tort of patent infringement in this District and/or has induced others to commit patent infringement in this District.

12.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b), (c), and (d), as well as 28 U.S.C. § 1400(b), in that LG is subject to personal jurisdiction in this District, and therefore is deemed to reside in this District for purposes of venue, and, upon information and belief, LG has committed acts within this judicial District giving rise to this action and does business in this District, including but not limited to making sales in this District, providing service and support to their respective customers in this District, and/or operating an interactive website that is available to persons in this District, which website advertises, markets, and/or offers for sale infringing products.

## BACKGROUND

**A.     The Patents-In-Suit and the First Lawsuit**

13.     U.S. Patent No. 7,404,660 titled "Light Emitting Panel Assemblies" ("the '660 patent") was duly and legally issued by the U.S. Patent and Trademark Office on July 29, 2008, after full and fair examination. Jeffery R. Parker is the sole inventor listed on the '660 patent. A true and correct copy of the '660 patent is attached as **Exhibit A** and made a part hereof.

4

14.     U.S. Patent No. 7,384,177 titled "Light Emitting Panel Assemblies" ("the '177 patent") was duly and legally issued by the U.S. Patent and Trademark Office on June 10, 2008, after full and fair examination. Jeffery R. Parker is the sole inventor listed on the '177 patent. A true and correct copy of the '177 patent is attached as **Exhibit B** and made a part hereof.

15.     U.S. Patent No. 7,434,973 titled "Light Emitting Panel Assemblies" ("the '973 patent") was duly and legally issued by the U.S. Patent and Trademark Office on October 14, 2008, after full and fair examination. Jeffery R. Parker, Gregory A. Coghlan, and Robert M. Ezell are the inventors listed on the '973 patent. A true and correct copy of the '973 patent is attached as **Exhibit C** and made a part hereof.

16.     The '973 patent is referred to as the "DDG patent."

17.     The '177 patent and the '660 patent are collectively referred to as the "IDT patents." Together, the "DDG patent" and the "IDT patents" are the "patents-in-suit."

18.     On June 26, 2013, IDT was assigned all of the right, title, and interest in the IDT patents, including the exclusive right to sue and collect for its own use and benefit all claims for damages by reason of past infringement or use of the IDT patents.

19.     On December 20, 2013, DDG was assigned all of the right, title, and interest in the DDG patent, including the exclusive right to sue and collect for its own use and benefit all claims for damages by reason of past infringement or use of the DDG patent.

20.     The patents-in-suit all share the same ultimate parent patent, U.S. Patent No. 5,613,751. The patents-in-suit share inventors, subject matter, and claim terms. The accused products infringe the patents-in-suit based on the use of the same technology, *i.e.*, backlights for LCD displays. And IDT and DDG share a common corporate parent.

21.     On December 31, 2013, Plaintiffs filed a complaint against LG in this District, asserting infringement of the '660 and '177 patents. *Delaware Display Group LLC, et al. v. LG Electronics, Inc. et al.*, No. 13-cv-2109-RGA (D. Del.) (the "First Lawsuit"). Plaintiffs identified their initial list of accused LG products on August 22, 2014. Plaintiffs served LG with preliminary infringement contentions on November 21, 2014. Plaintiffs amended their list of accused display products against LG on March 30, 2015. On May 5, 2015, Plaintiffs filed a motion for leave to amend their complaint to add the '973 patent. On July 28, 2015, Plaintiffs filed that amended complaint. On October 14, 2015, Plaintiffs served supplemental infringement contentions on LG.

22.     On April 3, 2015, LG joined several other defendants in counterpart cases to file a motion for stay pending *inter partes* review of the patents in the First Lawsuit. On October 19, 2015, the Court heard that motion, and decided to stay the case unless Plaintiffs dismissed the '660 patent, '177 patent, and '973 patent from the First Lawsuit without prejudice. Plaintiffs agreed to dismiss those patents without prejudice, and the Court entered a corresponding order on October 21, 2015. D.I. 125.

23.     Plaintiffs now file this new lawsuit alleging infringement of the '660 patent, '177 patent, and '973 patent. Plaintiffs do not intend to proceed with this lawsuit until the Patent Trial and Appeal Board issues final decisions for or dismisses the following proceedings: IPR2014-01362; IPR2015-00487; IPR2015-00506; and any IPR proceeding joined with those proceedings. Plaintiffs will agree to extend LG's answer dates or agree to a post-answer stay of this lawsuit pending those final decisions or dismissals.

## B.     LG's Infringing Conduct

24.     Upon information and belief, LG makes, uses, offers to sell, and/or sells within, and/or imports into the United States display products that use the fundamental technologies covered by the patents-in-suit. Upon information and belief, the infringing display products

include, but are not limited to, mobile phones, tablets, televisions, monitors, and LCD modules with edge-lit backlights for illuminating liquid crystal displays. By way of example only, Plaintiffs identify the Optimus E970 mobile phone and the LP140WD2-TPB1 and LC215EUE-TCA1 LCD modules as an infringing display products.

25.     The infringing display products with edge-lit backlights for LCDs incorporate the fundamental technologies covered by the patents-in-suit. For example, relating to the '660 patent, the edge-lit backlights for LCDs in these infringing display products include optical conductors that receive light from light sources. The light sources can be LEDs that generate light having an output distribution defined by a greater width component than height component. The light sources are arranged adjacent to an input edge of the optical conductor such that they can direct light into the optical conductor. The light travels through the optical conductor, eventually emitting from an output region. The output region on the optical conductor includes a predetermined pattern of deformities for emitting light. The optical conductor also has a transition region between the light sources and the output region.

26.     The infringing display products with edge-lit backlights for LCDs incorporate the fundamental technologies covered by the '177 patent. For example, the edge-lit backlights for LCDs in these infringing display products include a tray having a back wall and continuous side walls that form a hollow cavity or recess completely surrounded by the side walls. The tray can act as a reflector (including a back, side edge, and end edge reflector). Moreover the tray includes secondary flat, angled, faceted or curved reflective surfaces that redirect the light in a predetermined manner, including, for example, in a manner designed to increase the efficiency of the backlight, and also that facilitate better mixing of the light to produce a desired uniformity. The edge-lit backlights for LCDs include several light sources (*e.g.*, LEDs in a strip) in the tray's

cavity or recess. And they include at least one sheet, film or substrate (*e.g.*, a diffuser and/or brightness enhancement film) for controlling the light emitted from the assembly to fit a particular application (*e.g.*, illuminating an LCD).

27.    The infringing display products with edge-lit backlights for LCDs incorporate the fundamental technologies covered by the '973 patent. For example, the edge-lit backlights for LCDs in these infringing display products include a light emitting panel member with at least one input edge. To direct light into the panel member, light sources are optically coupled to different portions of the width of the input edge. The panel member includes a pattern of individual light extracting deformities associated with respective light sources, with the deformities being projections/depressions for producing a desired light output, *e.g.*, an output for illuminating an LCD. The deformities have a length and width substantially smaller than the length and width of the surface on/in which those deformities are found. The deformities that are in close proximity to the input edge of the panel member increase in, for example, density and/or size as the distance of the deformities from the respective light sources increases across the width of the panel member. Also for example, the density and/or size of the deformities in close proximity to the input edge is greatest at approximate midpoints between adjacent pairs of the light sources.

28.    By incorporating the fundamental inventions covered by the patents-in-suit, LG can make improved products, including but not limited to, products with longer displays, thinner displays, and/or displays with a higher light output, a more uniform light output, a lower power requirement, and/or a longer battery life.

29.    Upon information and belief, third-parties purchase and have purchased LG's infringing display products for sale or importation into the United States, including this District.

Upon information and belief, third-party consumers use and have used LG's infringing display products in the United States, including this District.

30.     Upon information and belief, LG has purchased infringing display products that are made, used, offered for sale, sold within, and/or imported into the United States.

**COUNT I**

**Patent Infringement of U.S. Patent No. 7,404,660**

31.     Plaintiffs repeat and re-allege each and every allegation of paragraphs 1-30 as though fully set forth herein.

32.     The '660 patent is valid and enforceable.

33.     Upon information and belief, LG has never been licensed, either expressly or impliedly, under the '660 patent for the accused display products in this case. For clarity, while many parties have taken licenses to the patents-in-suit, Plaintiffs are not accusing any licensed products in this lawsuit.

34.     Upon information and belief, to the extent any marking or notice was required by 35 U.S.C. § 287, IDT and its predecessors have complied with the requirements of that statute by providing actual or constructive notice to LG of its alleged infringement. Upon information and belief, IDT surmises that any express licensees of the '660 patent have complied with the marking requirements of 35 U.S.C. § 287 by placing a notice of the '660 patent on all goods made, offered for sale, sold within, and/or imported into the United States that embody one or more claims of that patent.

35.     Upon information and belief, LG has been directly infringing under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, and/or indirectly infringing, by way of inducement with specific intent under 35 U.S.C. § 271(b), the '660 patent by making, using, offering to sell, and/or selling to third-party distributors, and/or consumers (directly or through

intermediaries and/or subsidiaries) in this District and elsewhere within the United States and/or importing into the United States, without authority, display products that include all of the limitations of one or more claims of the '660 patent, including but not limited to mobile phones, tablets, televisions, monitors, and LCD modules with edge-lit backlights for illuminating a liquid crystal display. The edge-lit backlights for LCDs in these infringing display products include infringing features/components such as optical conductors that receive light from light sources. The light sources can be LEDs that generate light having an output distribution defined by a greater width component than height component. The light sources are arranged adjacent to an input edge of the optical conductor such that they can direct light into the optical conductor. The light travels through the optical conductor, eventually emitting from an output region. The output region on the optical conductor includes a predetermined pattern of deformities for emitting light. The optical conductor also has a transition region between the light sources and the output region. By incorporating the fundamental inventions covered by the '660 patent, LG can make improved products, including but not limited to, products with longer displays, thinner displays, and/or displays with a higher light output, a more uniform light output, a lower power requirement, and/or a longer battery life.

36.     Upon information and belief, distributors, consumers, and other parties that purchase LG's display products that include all of the limitations of one or more claims of the '660 patent, including but not limited to mobile phones, tablets, televisions, monitors, and LCD modules with edge-lit backlights for illuminating a liquid crystal display, also directly infringe, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), the '660 patent by using, offering to sell, and/or selling to third-party distributors or consumers (directly or through

intermediaries and/or subsidiaries) in this District and elsewhere within the United States and/or importing into the United States, those infringing display products.

37.    Upon information and belief, the third-party manufacturers, distributors, and importers that sell display products to LG that include all of the limitations of one or more claims of the '660 patent, also directly infringe, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), the '660 patent by making, offering to sell, and/or selling (directly or through intermediaries and/or subsidiaries) infringing display products in this District and elsewhere within the United States and/or importing infringing products into the United States.

38.    Upon information and belief, LG had knowledge of the '660 patent and its infringing conduct at least since February 8, 2013, as described below.

39.    Upon information and belief, on February 8, 2013, Mr. Robert Ranucci at Rambus (a prior owner of the patents-in-suit) sent a letter to LG at the above listed address for both LG Electronics and LG Display, describing the portfolio that includes the patents-in-suit, including enclosures with charts identifying the '660 patent, exemplary claims of the '660 patent, and a description of the features covered by the '660 patent. Upon information and belief, Rambus's letter also included an offer to license the patent portfolio to LG. Upon information and belief, on February 21, 2013, LG responded to Mr. Ranucci's letter stating that it appreciated Rambus identifying the patents and offering a license, but that it would take time for LG to review the patents and products before it engaged in licensing discussions.

40.    On June 28, 2013, Plaintiff IDT filed lawsuits against several parties in the Eastern District of Texas, alleging infringement of the '660 patent, including Dell Inc. ("Dell") and Hewlett-Packard Co. ("HP"). *Innovative Display Technologies LLC v. Dell, Inc.*, Case No. 2:13-cv-00523-RSP (E.D. Tex.); *Innovative Display Technologies LLC v. Hewlett-Packard Company*,

Case No. 2:13-cv-00524-JRG-RSP (E.D. Tex.). On December 20, 2013, Plaintiff IDT served infringement contentions against Dell and HP for the '660 patent. Those contentions alleged infringement of the '660 patent based in part on LG-supplied LCD modules (*e.g.*, LCD modules LP133WH2-TLGA, LP156WH3-TLSA, LP156WH4-TLQ2), which, absent a license, are accused in this lawsuit. LG publicly admitted that it was indemnifying Dell and HP in those lawsuits. On March 10, 2015, the lawsuits against Dell and HP were dismissed following a settlement agreement between the parties.

41.     On December 31, 2013, Plaintiffs filed a complaint against LG in this District, asserting infringement of the '660 patent (First Lawsuit). Plaintiffs identified their initial list of accused LG products on August 22, 2014. Plaintiffs served LG with preliminary infringement contentions on November 21, 2014. Plaintiffs amended their list of accused display products against LG on March 30, 2015. On October 14, 2015, Plaintiffs served supplemental infringement contentions on LG.

42.     LG's acts of infringement of the '660 patent have been willful and intentional. Since at least the above-mentioned date of notice, LG has acted with an objectively high likelihood that its actions constituted infringement of the '660 patent by refusing to take a license and continuing to make, sell, and import display products that include all of the limitations of one or more claims of the '660 patent, and the objectively-defined risk of infringement was either known or so obvious that it should have been known. LG has known about the '660 patent since as least as early as February 8, 2013. LG has been aware that it infringes the '660 patent since at least then; LG has participated in many lawsuits involving the '660 patent since then. Instead of taking a license during that time, LG has opted to make the business decision to "efficiently infringe" the '660 patent. In doing so, LG has willfully infringed the patents-in-suit.

43.     Upon information and belief, since at least the above-mentioned date when LG became aware of its infringement, LG has actively induced, under U.S.C. § 271(b), third-party manufacturers, distributors, importers and/or consumers that purchase or sell display products that include all of the limitations of one or more claims of the '660 patent, including but not limited to mobile phones, tablets, televisions, monitors, and LCD modules with edge-lit backlights for illuminating a liquid crystal display, to directly infringe one or more claims of the '660 patent. Since at least the notice provided on the above-mentioned date, LG does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '660 patent. Upon information and belief, LG intends to cause, and has taken affirmative steps to induce, infringement by these third-party manufacturers, distributors, importers, and/or consumers by, *inter alia*, creating advertisements that promote the infringing use of display products, creating established distribution channels for these products into and within the United States, purchasing these products, manufacturing these products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

44.     As a direct and proximate result of these acts of patent infringement, LG has encroached on the exclusive rights of IDT and its licensees to practice the '660 patent, for which IDT is entitled to at least a reasonable royalty.

## COUNT II

## Patent Infringement of U.S. Patent No. 7,384,177

45.     Plaintiffs repeat and re-allege each and every allegation of paragraphs 1-44 as though fully set forth herein.

46.     The '177 patent is valid and enforceable.

47.     Upon information and belief, LG has never been licensed, either expressly or impliedly, under the '177 patent for the accused display products in this case. For clarity, while many parties have taken licenses to the patents-in-suit, Plaintiffs are not accusing any licensed products in this lawsuit.

48.     Upon information and belief, to the extent any marking or notice was required by 35 U.S.C. § 287, IDT and its predecessors have complied with the requirements of that statute by providing actual or constructive notice to LG of its alleged infringement. Upon information and belief, IDT surmises that any express licensees of the '177 patent have complied with the marking requirements of 35 U.S.C. § 287 by placing a notice of the '177 patent on all goods made, offered for sale, sold within, and/or imported into the United States that embody one or more claims of that patent.

49.     Upon information and belief, LG has been directly infringing under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, and/or indirectly infringing, by way of inducement with specific intent under 35 U.S.C. § 271(b), the '177 patent by making, using, offering to sell, and/or selling to third-party distributors, and/or consumers (directly or through intermediaries and/or subsidiaries) in this District and elsewhere within the United States and/or importing into the United States, without authority, display products that include all of the limitations of one or more claims of the '177 patent, including but not limited to mobile phones, tablets, televisions, monitors, and LCD modules with edge-lit backlights for illuminating a liquid crystal display. The edge-lit backlights for LCDs in these infringing display products include a tray having a back wall and continuous side walls that form a hollow cavity or recess completely surrounded by the side walls. The tray can act as a reflector (including a back, side edge, and end edge reflector). Moreover the tray includes secondary flat, angled, faceted or curved reflective

14

surfaces that redirect the light in a predetermined manner, including, for example, in a manner designed to increase the efficiency of the backlight, and also that facilitate better mixing of the light to produce a desired uniformity. The edge-lit backlights for LCDs include several light sources (*e.g.*, LEDs in a strip) in the tray's cavity or recess. And they include at least one sheet, film or substrate (*e.g.*, a diffuser and/or brightness enhancement film) for controlling the light emitted from the assembly to fit a particular application (*e.g.*, illuminating an LCD). By incorporating the fundamental inventions covered by the '177 patent, LG can make improved products, including but not limited to, products with longer displays, thinner displays, and/or displays with a higher light output, a more uniform light output, a lower power requirement, and/or a longer battery life.

50.    Upon information and belief, distributors, consumers, and other parties that purchase LG's display products that include all of the limitations of one or more claims of the '177 patent, including but not limited to mobile phones, tablets, televisions, monitors, and LCD modules with edge-lit backlights for illuminating a liquid crystal display, also directly infringe, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), the '177 patent by using, offering to sell, and/or selling to third-party distributors or consumers (directly or through intermediaries and/or subsidiaries) in this District and elsewhere within the United States and/or importing into the United States, those infringing display products.

51.    Upon information and belief, the third-party manufacturers, distributors, and importers that sell display products to LG that include all of the limitations of one or more claims of the '177 patent, also directly infringe, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), the '177 patent by making, offering to sell, and/or selling (directly or through

intermediaries and/or subsidiaries) infringing display products in this District and elsewhere within the United States and/or importing infringing products into the United States.

52.     Upon information and belief, LG had knowledge of the '177 patent and its infringing conduct at least since February 8, 2013, as described below.

53.     Upon information and belief, on February 8, 2013, Mr. Robert Ranucci at Rambus (a prior owner of the patents-in-suit) sent a letter to LG at the above listed address for both LG Electronics and LG Display, describing the portfolio that includes the patents-in-suit, including enclosures with charts identifying the '177 patent, exemplary claims of the '177 patent, and a description of the features covered by the '177 patent. Upon information and belief, Rambus's letter also included an offer to license the patent portfolio to LG. Upon information and belief, on February 21, 2013, LG responded to Mr. Ranucci's letter stating that it appreciated Rambus identifying the patents and offering a license, but that it would take time for LG to review the patents and products before it engaged in licensing discussions.

54.     On June 28, 2013, Plaintiff IDT filed lawsuits against several parties in the Eastern District of Texas, alleging infringement of the '177 patent, including Dell Inc. ("Dell") and Hewlett-Packard Co. ("HP"). *Innovative Display Technologies LLC v. Dell, Inc.*, Case No. 2:13-cv-00523-RSP (E.D. Tex.); *Innovative Display Technologies LLC v. Hewlett-Packard Company*, Case No. 2:13-cv-00524-JRG-RSP (E.D. Tex.). On December 20, 2013, Plaintiff IDT served infringement contentions against Dell and HP for the '177 patent. Those contentions alleged infringement of the '177 patent based in part on LG-supplied LCD modules (*e.g.*, LCD modules LP133WH2-TLGA, LP156WH3-TLSA, LP156WH4-TLQ2), which, absent a license, are accused in this lawsuit. LG publicly admitted that it was indemnifying Dell and HP in those lawsuits. On

March 10, 2015, the lawsuits against Dell and HP were dismissed following a settlement agreement between the parties.

55.     On December 31, 2013, Plaintiffs filed complaint against LG in this District, asserting infringement of the '177 patent (First Lawsuit). Plaintiffs identified their initial list of accused LG products on August 22, 2014. Plaintiffs served LG with preliminary infringement contentions on November 21, 2014. Plaintiffs amended their list of accused display products against LG on March 30, 2015. On October 14, 2015, Plaintiffs served supplemental infringement contentions on LG.

56.     LG's acts of infringement of the '177 patent have been willful and intentional. Since at least the above-mentioned date of notice, LG has acted with an objectively high likelihood that its actions constituted infringement of the '177 patent by refusing to take a license and continuing to make, sell, and import display products that include all of the limitations of one or more claims of the '177 patent, and the objectively-defined risk of infringement was either known or so obvious that it should have been known. LG has known about the '177 patent since as least as early as February 8, 2013. LG has been aware that it infringes the '177 patent since at least then; LG has participated in many lawsuits involving the '177 patent since then. Instead of taking a license during that time, LG has opted to make the business decision to "efficiently infringe" the '177 patent. In doing so, LG has willfully infringed the patents-in-suit.

57.     Upon information and belief, since at least the above-mentioned date when LG became aware of its infringement, LG has actively induced, under U.S.C. § 271(b), third-party manufacturers, distributors, importers and/or consumers that purchase or sell display products that include all of the limitations of one or more claims of the '177 patent, including but not limited to mobile phones, tablets, televisions, monitors, and LCD modules with edge-lit backlights for

17

illuminating a liquid crystal display, to directly infringe one or more claims of the '177 patent. Since at least the notice provided on the above-mentioned date, LG does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '177 patent. Upon information and belief, LG intends to cause, and has taken affirmative steps to induce, infringement by these third-party manufacturers, distributors, importers, and/or consumers by, *inter alia*, creating advertisements that promote the infringing use of display products, creating established distribution channels for these products into and within the United States, purchasing these products, manufacturing these products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

58.     As a direct and proximate result of these acts of patent infringement, LG has encroached on the exclusive rights of IDT and its licensees to practice the '177 patent, for which IDT is entitled to at least a reasonable royalty.

## COUNT III

### Patent Infringement of U.S. Patent No. 7,434,973

59.     Plaintiffs repeat and re-allege each and every allegation of paragraphs 1-58 as though fully set forth herein.

60.     The '973 patent is valid and enforceable.

61.     Upon information and belief, LG has never been licensed, either expressly or impliedly, under the '973 patent for the accused display products in this case. For clarity, while many parties have taken licenses to the patents-in-suit, Plaintiffs are not accusing any licensed products in this lawsuit.

62.     Upon information and belief, to the extent any marking or notice was required by 35 U.S.C. § 287, DDG and its predecessors have complied with the requirements of that statute by providing actual or constructive notice to LG of its alleged infringement. Upon information and belief, DDG surmises that any express licensees of the '973 patent have complied with the marking requirements of 35 U.S.C. § 287 by placing a notice of the '973 patent on all goods made, offered for sale, sold within, and/or imported into the United States that embody one or more claims of that patent.

63.     Upon information and belief, LG has been directly infringing under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, and/or indirectly infringing, by way of inducement with specific intent under 35 U.S.C. § 271(b), the '973 patent by making, using, offering to sell, and/or selling to third-party distributors, and/or consumers (directly or through intermediaries and/or subsidiaries) in this District and elsewhere within the United States and/or importing into the United States, without authority, display products that include all of the limitations of one or more claims of the '973 patent, including but not limited to mobile phones, tablets, televisions, monitors, and LCD modules with edge-lit backlights for illuminating a liquid crystal display. The edge-lit backlights for LCDs in these infringing display products include a light emitting panel member with at least one input edge. To direct light into the panel member, light sources are optically coupled to different portions of the width of the input edge. The panel member includes a pattern of individual light extracting deformities associated with respective light sources, with the deformities being projections/depressions for producing a desired light output, *e.g.*, an output for illuminating an LCD. The deformities have a length and width substantially smaller than the length and width of the surface on/in which those deformities are found. The deformities that are in close proximity to the input edge of the panel member increase

in, for example, density and/or size as the distance of the deformities from the respective light sources increases across the width of the panel member. Also for example, the density and/or size of the deformities in close proximity to the input edge is greatest at approximate midpoints between adjacent pairs of the light sources. By incorporating the fundamental inventions covered by the '973 patent, LG can make improved products, including but not limited to, products with longer displays, thinner displays, and/or displays with a higher light output, a more uniform light output, a lower power requirement, and/or a longer battery life.

64.     Upon information and belief, distributors, consumers, and other parties that purchase LG's display products that include all of the limitations of one or more claims of the '973 patent, including but not limited to mobile phones, tablets, televisions, monitors, and LCD modules with edge-lit backlights for illuminating a liquid crystal display, also directly infringe, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), the '973 patent by using, offering to sell, and/or selling to third-party distributors or consumers (directly or through intermediaries and/or subsidiaries) in this District and elsewhere within the United States and/or importing into the United States, those infringing display products.

65.     Upon information and belief, the third-party manufacturers, distributors, and importers that sell display products to LG that include all of the limitations of one or more claims of the '973 patent, also directly infringe, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), the '973 patent by making, offering to sell, and/or selling (directly or through intermediaries and/or subsidiaries) infringing display products in this District and elsewhere within the United States and/or importing infringing products into the United States.

66.     Upon information and belief, LG had knowledge of the '973 patent and its infringing conduct at least since February 8, 2013, as described below.

67.     Upon information and belief, on February 8, 2013, Mr. Robert Ranucci at Rambus (a prior owner of the patents-in-suit) sent a letter to LG at the above listed address for both LG Electronics and LG Display, describing the portfolio that includes the patents-in-suit, including enclosures with charts identifying the '973 patent, exemplary claims of the '973 patent, and a description of the features covered by the '973 patent. Upon information and belief, Rambus's letter also included an offer to license the patent portfolio to LG. Upon information and belief, on February 21, 2013, LG responded to Mr. Ranucci's letter stating that it appreciated Rambus identifying the patents and offering a license, but that it would take time for LG to review the patents and products before it engaged in licensing discussions.

68.     On December 31, 2013, Plaintiffs filed a complaint against LG in this District, asserting infringement of patents related to the '973 patent (First Lawsuit). Plaintiffs identified their initial list of accused LG products on August 22, 2014. Plaintiffs served LG with preliminary infringement contentions on November 21, 2014. Plaintiffs amended their list of accused display products against LG on March 30, 2015. On October 14, 2015, Plaintiffs served supplemental infringement contentions on LG. On May 5, 2015, Plaintiffs filed a motion for leave to amend their complaint to add the '973 patent. On July 28, 2015, Plaintiffs filed that amended complaint.

69.     LG's acts of infringement of the '973 patent have been willful and intentional. Since at least the above-mentioned date of notice, LG has acted with an objectively high likelihood that its actions constituted infringement of the '973 patent by refusing to take a license and continuing to make, sell, and import display products that include all of the limitations of one or more claims of the '973 patent, and the objectively-defined risk of infringement was either known or so obvious that it should have been known. LG has known about the '973 patent since as least as early as February 8, 2013. LG has been aware that it infringes the '973 patent since at least then.

Instead of taking a license during that time, LG has opted to make the business decision to "efficiently infringe" the '973 patent. In doing so, LG has willfully infringed the patents-in-suit.

70.     Upon information and belief, since at least the above-mentioned date when LG became aware of its infringement, LG has actively induced, under U.S.C. § 271(b), third-party manufacturers, distributors, importers and/or consumers that purchase or sell display products that include all of the limitations of one or more claims of the '973 patent, including but not limited to mobile phones, tablets, televisions, monitors, and LCD modules with edge-lit backlights for illuminating a liquid crystal display, to directly infringe one or more claims of the '973 patent. Since at least the notice provided on the above-mentioned date, LG does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '973 patent. Upon information and belief, LG intends to cause, and has taken affirmative steps to induce, infringement by these third-party manufacturers, distributors, importers, and/or consumers by, *inter alia*, creating advertisements that promote the infringing use of display products, creating established distribution channels for these products into and within the United States, purchasing these products, manufacturing these products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

71.     As a direct and proximate result of these acts of patent infringement, LG has encroached on the exclusive rights of DDG and its licensees to practice the '973 patent, for which DDG is entitled to at least a reasonable royalty.

**CONCLUSION**

72.     Plaintiffs are entitled to recover from LG the damages sustained by Plaintiffs as a result of LG's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

73.     Plaintiffs have incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute create an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiffs are entitled to recover their reasonable and necessary attorneys' fees, costs, and expenses.

**JURY DEMAND**

74.     Plaintiffs hereby request a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

75.     Plaintiffs respectfully request that the Court find in its favor and against LG, and that the Court grant Plaintiffs the following relief:

A.     A judgment that LG has infringed the patents-in-suit as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

B.     A judgment for an accounting of all damages sustained by Plaintiffs as a result of the acts of infringement by LG;

C.     A judgment and order requiring LG to pay Plaintiffs damages under 35 U.S.C. § 284, including up to treble damages for willful infringement as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

D.     A judgment and order requiring LG to pay Plaintiffs pre-judgment and post-judgment interest on the damages awarded;

E.      A judgment and order finding this to be an exceptional case and requiring LG to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

F.      Such other and further relief as the Court deems just and equitable.

Dated: December 30, 2015

Of Counsel:

Jeffrey R. Bragalone
Patrick J. Conroy
Justin B. Kimble
Daniel F. Olejko
T. William Kennedy Jr.
BRAGALONE CONROY P.C.
Chase Tower,
2200 Ross Ave., Suite 4500W
Dallas, Texas 75201
214-785-6670 Telephone
214-785-6680 Facsimile
jbragalone@bcpc-law.com
pconroy@bcpc-law.com
jkimble@bcpc-law.com
dolejko@bcpc-law.com

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
302-777-0300 Telephone
302-777-0301 Facsimile
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Attorneys for Plaintiffs
**DELAWARE DISPLAY GROUP LLC and
INNOVATIVE DISPLAY
TECHNOLOGIES LLC**